MOORE, J.
| Jerome Felix Hardy Jr. was convicted of possession or introduction of contraband into a penal institution, adjudicated a fourth felony offender and sentenced to 20 years at hard labor without benefit of parole, probation or suspension of sentence. He now appeals, urging that the district court erred in admitting into evidence the confession he signed in a disciplinary hearing at the detention center and in denying him the benefit of parole. We affirm Hardy’s conviction and adjudication, and amend the sentence only to remove the denial of parole.

Factual Background

Hardy was a pretrial detainee in the Lincoln Parish Detention Center, a parish *1092 prison or jail defined as a penal institution in La. R.S. 14:402 E.
On October 25, 2009, deputies conducted a routine “shakedown” of Dorm H, where Hardy was housed. While two deputies searched the cells, Lieutenant Corey Ray took the four occupants to the library area for a strip search. Lt. Ray testified that Hardy thoroughly complied with the strip search until the final item of clothing, his underwear. Showing his backside, Hardy handed his shorts to Lt. Ray, but Lt. Ray heard the “rattling” or “krinkling” sound of a plastic bag. Sensing that Hardy was hiding contraband, Lt. Ray phoned for assistance. Captain Randy Williams, who had been searching the dorm, ran to the library. As he entered the door, both he and Lt. Ray both saw Hardy lift a cell phone and hurl it to the floor, where it shattered into several pieces. They recovered the pieces of the Nokia cell phone, as well as a charger in a plastic bag on the floor.
| ?Lt. Ray testified that Hardy told him, “This is bullshit — it’s not mine.” When Lt. Ray asked him whose phone it was, Hardy replied, “I’m not a rat.” Capt. Williams did not overhear any of this, but testified that Hardy told him, ‘You got me,” a remark that Hardy strongly denied making.
Because the cell phone is deemed contraband in a penal institution, La. R.S. 14:402 E(7), deputies immediately placed Hardy in lockdown or an isolation room. Authorities were able to reassemble the cell phone but could not get it to work; they also could not determine who actually owned it. They did not fingerprint the phone or the charger, and they disposed of the plastic bag as it was not contraband. Sometime after the incident, deputies brought Hardy to a disciplinary hearing before Assistant Warden Edward Thompson and Lieutenant Donald Warren.[1] The disciplinary report stated that Hardy “had a cell phone in the groin area of his boxers” and he “then grabbed the phone and forcefully threw it on the floor.” Assistant Warden Thompson testified that he read the charge to Hardy, who immediately admitted possessing the cell phone and signed the report. For this violation, he was sentenced to five days in isolation.

Procedural History

In January 2010 the state charged Hardy with possession or introduction of contraband into a penal institution, La. R.S. 14:402 E(7). Hardy filed a motion to suppress all his statements to authorities at Lincoln RParish Detention Center. After a pretrial hearing on the motion to suppress, the court found that the first two statements to Lt. Ray and Capt. Williams were “voluntary, spontaneous, initiated by the defendant^] * * * not as a result of questioning or the functional equivalent thereof by any law enforcement,” and hence admissible. However, the third statement, to Lt. Ray (“I’m not a rat”), was made in custodial interrogation without the requisite Miranda warnings and thus inadmissible.
The matter proceeded to a six-member jury trial in May 2010, at which the witnesses testified as outlined above. Hardy maintained that one of the other inmates, named Watts, was trying to “get rid of something” as they were being walked from the dorm to the library; Lt. Ray chased Watts down but could not recover the object; when he (Hardy) squatted to remove his boxers, he saw the cell phone *1093 under a table in the library, and so did Lt. Ray; Lt. Ray radioed for help and Capt. Williams quickly arrived. Hardy admitted that he “probably” told Lt. Ray, “This is bullshit,” but denied ever telling anyone that he “possessed” the phone.
On cross-examination, the state asked Hardy about his confession at the disciplinary hearing. The court removed the jury and held a free-and-voluntary hearing in which Assistant Warden Thompson and Lt. Warren testified they used no threats or coercion to get Hardy to sign the report. They admitted that a disciplinary hearing conferred no right to counsel, discovery or pretrial hearings, and that they just read the charge to the inmate for him to plead guilty or not guilty. They testified that if an inmate pled guilty, they sentenced him to five days in isolation; if he pled not |4guilty, they would have to continue the investigation, and Lt. Warren admitted that the inmate could “possibly” get more than five days. Hardy testified that he signed the report because he thought he would “get out sooner” by pleading guilty; he felt “coerced” and deprived of due process. He added that the system was “pretty ingenious” to keep people in solitary.
The court found that no threats or promises had been used to obtain the confession; Hardy’s purely subjective belief that pleading guilty would get him out of solitary did not make the statement involuntary. The court therefore admitted the disciplinary report.
When the jury returned, Hardy reiterated that he signed the report only to get out of solitary, admitted that he may have told Lt. Ray, “I’m not a rat,” and insisted that cell phones were rampant in the Lincoln Parish Detention Center. He said the usual penalty was five days’ detention, not criminal prosecution.
The jury found Hardy guilty as charged. The state then charged him as a fourth felony offender, citing a 1997 guilty plea in the Third JDC to two counts of simple burglary of an inhabited dwelling, a 1998 guilty plea in the Third JDC to possession of cocaine, and a 2000 guilty plea in San Bernardino County, California, to possession for sale of cocaine. The court adjudicated him a fourth felony offender and sentenced him to 20 years at hard labor without benefit of probation, parole or suspension of sentence.

Discussion: Admissibility of Disciplinary Report

By his first assignment of error, Hardy urges the court erred in finding that his admission to possession of contraband, in a prison disciplinary | shearing, was a free and voluntary statement. Although he could prove no actual threats or inducements, he shows that when he went to the hearing he had already been in isolation for “some time,” and he cites Lt. Warren’s admission that if he had not admitted guilt, he could have been returned to isolation for an indefinite period while authorities decided what to do. Because it was common knowledge that pleading guilty would get, him released in “no longer than five days,” this made his confession involuntary. He adds that because it was a direct admission of the crime charged, the confession cannot be harmless error.
The state replies that the district court did not abuse its discretion in finding the disciplinary report to be free and voluntary, and not made under the influence of fear, duress, intimidation, menace, threats, inducements or promises. The state also suggests that even though Hardy signed the report without receiving the requisite Miranda warnings, it can be allowed if the statement was made freely and voluntarily. Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).
Before a confession can be admitted into evidence, the state has the *1094 burden of affirmatively showing that it was made freely and voluntarily and not under the influence of fear, duress, intimidation, menace, threats, inducements or promises. La. R.S. 15:451; State v. Brown, 2003-0897 (La.4/12/05), 907 So.2d 1; State v. Wilson, 40,767 (La.App. 2 Cir. 8/23/06), 938 So.2d 1111, writ denied, 2006-2323 (La.4/20/07), 954 So.2d 159, cert. denied, 552 U.S. 917, 128 S.Ct. 275, 169 L.Ed.2d 201 (2007). If the statement was made during custodial interrogation, the state must also show that the | (¡defendant was advised of his constitutional rights under Miranda. Id. A trial court’s finding as to the free and voluntary nature of a statement carries great weight and will not be disturbed unless the evidence fails to support the court’s determination. State v. Holmes, 2006-2988 (La.12/2/08), 5 So.3d 42, cert. denied, — U.S. —, 130 S.Ct. 70, 175 L.Ed.2d 233 (2009); State v. Freeman, 45,127 (La.App. 2 Cir. 4/14/10), 34 So.3d 541, writ denied, 2010-1043 (La.11/24/10), 50 So.3d 827. A voluntary confession which is taken in violation of the prophylactic rule of Miranda is inadmissible in the state’s case-in-chief, but may still be used to impeach the defendant if he takes the stand. Harris v. New York, supra; State v. Lee, 524 So.2d 1176 (La.1988); State v. Shipp, 30,562 (La.App. 2 Cir. 4/8/98), 712 So.2d 230, writ denied, 98-1199 (La.9/25/98), 724 So.2d 775. The objective of finding the truth would not be served if a defendant could take the stand, lie under oath, and be insulated from his prior inculpatory statements. Harris v. New York, supra; State v. Shipp, supra.
 On close review, we find the evidence supports the district court’s ruling. Assistant Warden Thompson and Lt. Warren, who comprised the disciplinary board, testified that they merely informed Hardy of the charges against him and he chose to plead guilty. No witness — -including Hardy — described any duress, intimidation, menace, threats, inducements or promises. The only such evidence was Hardy’s self-serving claim that he thought the guilty plea would get him out of isolation sooner. Given that Hardy’s testimony was largely at odds with that of all the other witnesses, the district court was entitled to disregard his perception of subtle coercion. State v. Holmes, supra; State v. Freeman, supra. Moreover, the disciplinary report was admissible to impeach his testimony that he never admitted possessing the phone. State v. Lee, supra; State v. Shipp, supra. Given the consistency of the state’s evidence at the hearing on the motion to suppress, the trial and the free-and-voluntary hearing, admitting the disciplinary report did not unduly prejudice Hardy.[2]
This assignment lacks merit.

Denial of Parole

By his second assignment of error, Hardy urges the court erred in imposing a sentence without the possibility of parole. He shows that the applicable statute, La. R.S. 15:529.1 G, provides that habitual offender sentences are to be imposed “without benefit of probation or suspension of sentence,” and not without benefit of parole. State v. Tate, 99-1483 (La.11/24/99), 747 So.2d 519; State v. Holloway, 37,021 (La.App. 2 Cir. 5/16/03), 847 So.2d 200, writs denied, 2003-1720, -1929 (La.12/19/03), 861 So.2d 558, 560.
*1095 The state concedes that this argument has merit, and we agree that it was error to deny benefit of parole. This court recently stated that sentences under R.S. 15:529.1 G are to be imposed without benefit of probation or suspension of sentence, and not without benefit of parole; however, if the underlying offense carries a denial of parole, then the court may deny parole |sfor the enhanced sentence. State v. Bobo, 46,225 (La.App. 2 Cir. 6/8/11), 77 So.3d 1, writ denied, 2011-1524 (La.12/16/11), 76 So.3d 1202. The underlying statute, La. R.S. 14:402 G, provides no denial of parole. We therefore amend the sentence to delete the denial of parole.[3] In all other respects, the sentence is affirmed.

Conclusion

For the reasons expressed, Jerome Felix Hardy Jr.’s conviction and adjudication as a fourth felony offender are affirmed. His sentence of 20 years at hard labor is amended to delete the denial of the benefit of parole, but is otherwise affirmed.
CONVICTION AND ADJUDICATION AFFIRMED; SENTENCE AMENDED.

. The disciplinary report appears to be dated "10/25/09, 5:40 pm,” which would be only slightly over an hour after the incident itself, and all witnesses agreed this was wrong. Assistant Warden Thompson could not recall when die disciplinary hearing was held; Lt. Warren said it was probably about 10 days after the incident; Hardy testified it was 30 days after, all of which he had spent "in the hole.”

. Hardy also told the agent who prepared the presentence investigation that punishing him in the disciplinary hearing and again with prosecution was double jeopardy. However, he did not file a motion to quash on this ground and he did not designate jeopardy as an error on appeal. We would note parenthetically that action taken by a disciplinary board against a prison inmate provides no basis for a plea of double jeopardy. State v. Green, 301 So.2d 590 (La.1974); State v. Duncan, 98-1730 (La.App. 1 Cir. 6/25/99), 738 So.2d 706.

. The state also shows that because of his fourth felony status, Hardy is independently ineligible for parole under La. R.S. 15:574.4 A(l)(a). Determining the time and conditions of release on parole is the prerogative of the Parole Board, La. R.S. 15:574.2 D(l), but this court will nevertheless correct the illegal sentence.